UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC STONE-DUNLAP, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:20-cv-02687-TWP-DML |
| | ) |
| WARDEN, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Eric Stone-Dunlap's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case IYC 20-07-0117. For the reasons explained in this Order, Mr. Stone-Dunlap's petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. Disciplinary Proceeding**

On July 19, 2020, Indiana Department of Correction ("IDOC") Sgt. Foster wrote a Report of Conduct charging Mr. Stone-Dunlap with a violation of Code B-235, fleeing/resisting:

> On July 18th, 2020 at approximately 11:14 P.M. I, Sergeant D. Foster, responded to a First Responders call to Housing Unit South, G-Unit. Upon arrival I observed Offender Stone-Dunlap, Eric #201315 (HUS-G3-2U) and Offender Huston, Torrey #218188 (HUS-G3-3L) in a verbal altercation. I, Sergeant D. Foster, gave a verbal order for Offender Stone-Dunlap to submit to mechanical wrist restraints to which he refused and attempted to run and strike Offender Huston. Offender Stone-Dunlap was restrained and escorted out of the unit. Offender Stone-Dunlap was identified by his state-issued ID and informed of this Report of Conduct.

Dkt. 10-1.

Mr. Stone-Dunlap was notified of the charge on July 27, 2020. Dkt. 10-2. He pled not guilty, requested to call Officer Adeyeye as a witness, and requested video evidence of G-Unit which he stated would show he was not resisting. *Id.*

Officer Adeyeye answered Mr. Stone-Dunlap's question about whether or not he resisted in a witness statement:

> Yes he did. I, Ofc Adeyeye, did give Offender Stone multiple orders to stop fighting, but he did not respond[]. Once responders arrived he began to walk out but then tried to turn around while being escorted out[.]

Dkt. 10-7.

Mr. Stone-Dunlap was not permitted to view the video of the incident, but a summary was prepared:

> At 11:12:36 on hus g unit middle camera, Offender Stone-Dunlap can be seen running past an officer. He then strikes Offender Huston multiple times near the latrine/bed area door. The officer then turns around towards the incident, as Offender Huston picks Offender Stone-Dunlap up, and slams him to the ground in front of the bed area/latrine door. Offender Stone-Dunlap then stands up and tries to get towards Offender Huston, but an unknown offender stands in the middle of the two and pushes Offender Stone-Dunlap back, away from Offender Huston. This continues until 11:14:15, when first responders arrive. It is not clear if the first responders said anything to offender Stone-Dunlap, but Offender Stone-Dunlap is

seen with the first responders behind him as he tries again to get towards Offender Huston. First Responders then physically remove Offender Stone-Dunlap from the bed area.

Dkt. 10-6.

Mr. Stone-Dunlap's disciplinary hearing has held on August 11, 2020, and he stated "[t]he Doc index. for the write ups lists a resisting write up states that it has to be a physical resistance for it to be resisting." Dkt. 10-5. The Disciplinary Hearing Officer ("DHO") considered staff reports, Mr. Stone-Dunlap's statement, evidence from witnesses, and the video evidence and found Mr. Stone-Dunlap guilty. *Id.* His sanctions included deprivation of 60-days' earned-credit time (suspended) and enforcement of a 30-day loss of credit time from another disciplinary case. *Id.*

Mr. Stone-Dunlap appealed to the Facility Head but failed to successfully file a second-level appeal to the IDOC Final Reviewing Authority before filing this habeas action. *See* dkts. 10-8, 10-9 at 17.

The Warden asserts that Mr. Stone-Dunlap did not exhaust his administrative appeals and his claims are procedurally defaulted. Mr. Stone-Dunlap filed an appeal to the Facility Head on August 11, 2020, stating that he did not receive a fair hearing because a charge of fleeing/resisting requires physical resistance. Dkt. 10-8 at 3. The record indicates that Mr. Stone-Dunlap filed an appeal to the Final Reviewing Authority sometime between his first-level appeal and September 15, 2020. *Id.* at 1. The second appeal was premature,[1] as the petitioner had not first received a response from the Facility Head, but the Final Reviewing Authority's response provided him with

---

[1] The Final Reviewing Authority responded on September 15, 2020: "I am in receipt of this appeal. The hearing was held on August 11, 2020. A first appeal is due within 15 days of the hearing. I have not found a first appeal in this case. Thus, this second appeal appears not properly before me. Please submit a first appeal to the Warden of the Plainfield Correctional Facility. Once you have received a reply, if you wish to submit a 2nd appeal, you may do so at that time." Dkt. 10-8 at 1. The Court notes that Mr. Stone-Dunlap signed the bottom of this response. *Id.*

3

additional instructions on how to submit a timely second-level appeal once a response from the Warden was received. *Id.* The Warden denied Mr. Stone-Dunlap's first-level appeal on October 2, 2020, finding no errors in the case. *Id.* at 2. The Warden then instructed Mr. Stone-Dunlap that he could appeal to the Final Reviewing Authority. *Id.* Mr. Stone-Dunlap signed and dated the Warden's response on October 7, 2020. *Id.* The respondent presented Mr. Stone-Dunlap's records from the Offender Information System which indicate that he did not file a timely second-level appeal in this matter. Dkt. 10-9 at 18.

Though the Court reminded Mr. Stone-Dunlap that he had an opportunity to file a reply to the respondent's return, he did not explicitly do so. Dkt. 17. In a motion for court order filed on January 11, 2021, Mr. Stone-Dunlap argues that he did exhaust the administrative process because the IDOC policy states that "the superintendent has 30 days to answer the disciplinary hearing appeal, therefore per policy [he] could file [his] second appeal if the superintendent did not answer within 30 days." Dkt. 22 at 2. On January 15, 2021, the respondent filed a surreply arguing that "[n]owhere [in the DCAO] does it state that if the Warden does not respond to the appeal within 30 days, the offender may proceed to the second-level appeal." Dkt. 23 at 2-3.

On January 28, 2021, Mr. Stone-Dunlap filed an objection regarding exhaustion stating that "[i]t does not matter" whether he exhausted his remedies because the issue "involves a fundamental miscarriage of justice." Dkt. 24. However, the petitioner fails to articulate any example of a fundamental miscarriage of justice. *Id.*

**C. Analysis**

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the IDOC Review Officer or Final Reviewing Authority may be raised in a subsequent Petition for Writ of Habeas Corpus. *See* 28 U.S.C. § 2254(b)(1)(A); *Eads v. Hanks*, 280 F.3d 728, 729 (7th

4

Cir. 2002); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). The consequence of the failure to exhaust administrative appeals is that habeas corpus relief cannot be granted on any defaulted ground for relief.

The record indicates that Mr. Stone-Dunlap did not present a timely appeal to the IDOC Final Reviewing Authority. The IDOC Disciplinary Code outlines the appeals process as first requiring the offender to complete a first-level appeal to the Warden or designee of the facility where the hearing was held. Dkt. 10-11 at 53. "The Warden or designee shall respond to the appeal within 30 days from the date of receipt," and a copy of the appeal decision is provided to the offender and one is placed in his file. *Id.* at 54. An offender who has received a grievous loss may file a second-level appeal to the Final Reviewing Authority if he is not "satisfied with the appeal response from the Warden or designee[.]" *Id.* However, that second-level appeal "must be submitted within fifteen days (15) days from the date of receipt of the Warden or designee's appeal response." *Id.* The Court cannot conclude that the IDOC Disciplinary Code's procedure means that the offender can proceed to a second-level appeal if response from the Warden has not been received within 30 days. Rather, the steps make clear that the offender must submit the second-level appeal only after receiving the Warden's response.

Further, there is no evidence that the appellate process was unavailable to Mr. Stone-Dunlap. To the contrary, Mr. Stone-Dunlap was provided with instructions at each level regarding the next steps he would need to take to successfully exhaust his administrative remedies. The Final Reviewing Authority returned his premature second-level appeal telling him to first submit an appeal to the Warden and to wait for receipt of a response to then file the second-level appeal appropriately. Dkt. 10-8 at 1. The Warden reiterated this instruction in his later response telling Mr. Stone-Dunlap that he could take the next steps to file a next level appeal. *Id.* at 2. Mr. Stone-

Dunlap's signature appears on both of these response forms indicating that he received and reviewed their contents. *Id.* at 1-2. The record supports a finding that Mr. Stone-Dunlap took no further action after signing the response from the Warden on October 7, 2020, to resubmit a proper second-level appeal before the filing of his habeas petition just days later on October 13, 2020. *Id.*; dkt. 1. Thus, the petitioner has failed to exhaust the grounds raised in his petition.

Though the Court notes that the respondent's return additionally presents arguments on the merits of Mr. Stone-Dunlap's petition, the Court need not address these arguments. Because there are no grounds for relief that have been exhausted, the petition must be denied, and the case dismissed.

### D. Conclusion

Mr. Stone-Dunlap failed to exhaust his administrative remedies, and therefore, his grounds for relief cannot be considered on the merits. His petition for a writ of habeas corpus must be **denied** and the **action dismissed without prejudice.** Accordingly, Mr. Stone-Dunlap's remaining pending motions, dkts. [18], [21], and [22] are **denied as moot.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 2/23/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

ERIC STONE-DUNLAP
201315
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Molly Michelle McCann
INDIANA ATTORNEY GENERAL
molly.mccann@atg.in.gov

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov